WALLACE BARNES CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3653.  Promulgated March 12, 1928.

*Dwight C. Buffum* for the petitioner.
*J. Harry Byrne, Esq.*, for the respondent.

OPINION.

MARQUETTE: The record in this proceeding raises two questions for determination, namely: (1) Were the petitioner and the Tool Company affiliated during the year 1919 within the meaning of section 240 (b) of the Revenue Act of 1918 and entitled to file a consolidated return of income and invested capital?, and (2) Is the petitioner, in computing its net income from war contracts for 1919, entitled to deduct the amount expended in that year in rearranging and adapting its plant to peace-time production. The questions will be discussed in the order in which they are set forth:

The evidence which has been presented to us shows that the petitioner was a close corporation owned or controlled by C. F. Barnes, his wife, and their two sons. They owned outright more than 95 per cent of the capital stock and the remainder, which was owned by Barnes' nephew and by certain old and trusted employees of the corporation, was controlled by the Barnes family through written agreements that it would not be sold or transferred without the consent of the petitioner's board of directors which was dominated by the Barnes family. As to the Tool Company, we find that about 69 per cent of its stock was owned by the petitioner and that more than 21 per cent was owned by the petitioner's officers, stockholders and employees. These officers, stockholders, and employees, other than the members of the Barnes family, held their stock at the request of the Barnes and voted it in accordance with their interests and desires. The main interests of these stockholders were with the petitioner and not in the Tool Company, and they willingly supported, furthered, and carried out the policies determined and laid down by the Barnes for the operation of the Tool Company. If they were not directly under the control of the Barnes family, they were, and so considered themselves, closely affiliated with it and with the petitioner.

Of the shares of stock in the Tool Company owned by persons who were not officers of the petitioner, 5 shares were owned by Chidsey, who was a close personal friend and business associate of C. F. Barnes and who became a stockholder and director at his request and considered that he was there to represent the Barnes interest; 45 shares were owned by Tiffany and Bennett, who were also close personal friends of C. F. Barnes. They, however, took no active part in the affairs of the corporation but were content to let the Barnes family manage and direct it as they saw fit. It appears

that they were quiescent stockholders and that the only stock usually voted at stockholder's meetings was that owned or controlled by the Barnes family. We think that it is clear that the petitioner owned or controlled, through closely affiliated interests, substantially all of the capital stock of the Tool Company during the year 1919 and that the two corporations are entitled to file a consolidated return. See *Appeal of Baird Machine Co.*, 2 B. T. A. 1089.

The evidence relative to the second issue establishes that during the years 1917 and 1918, the petitioner enlarged, equipped, and rearranged its manufacturing plant, in order to handle Government war contracts. The cost thereof presumably was capitalized. Upon the conclusion of the war and the termination of the contracts, the petitioner found itself with a plant not suited to its normal peace-time activities. It was, therefore, in 1919, compelled to again rearrange the plant, as set forth in the findings of fact, to conform to peace-time requirements, at a cost of $16,499.60, which it seeks to deduct from its income derived from Government contracts in computing its war income for that year. The respondent now contends that the expenditure should be capitalized.

Section 301 (c) of the Revenue Act of 1918 reads as follows:

For the taxable year 1919 and each taxable year thereafter there shall be levied, collected, and paid upon the net income of every corporation which derives in such year a net income of more than $10,000 from any Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive, a tax equal to the sum of the following:

(1) Such a portion of a tax computed at the rate specified in subdivision (a) as the part of the net income attributable to such Government contract or contracts bears to the entire net income. In computing such tax the excess-profits credit and the war-profits credit applicable to the taxable year shall be used;

(2) Such a portion of a tax computed at the rates specified in subdivision (b) as the part of the net income not attributable to such Government contract or contracts bears to the entire net income.

For the purpose of determining the part of the net income attributable to such Government contract or contracts, the proper apportionment and allocation of the deductions with respect to gross income derived from such Government contract or contracts and from other sources, respectively, shall be determined under rules and regulations prescribed by the Commissioner with the approval of the Secretary.

The regulation promulgated by the Commissioner for the allocation of income from Government contracts as set forth in article 715 of Regulations 45, is as follows:

Whenever it is necessary to determine the portion of net income derived from or attributable to a particular source, the corporation shall allocate to the gross income derived from such source, and to the gross income derived from each other source, the expenses, losses, and other deductions properly appertaining thereto, and shall apply any general expenses, losses, and deductions (which can not properly be otherwise apportioned) ratably to the gross income

from all sources. The gross income derived from a particular source, less the deductions properly appertaining thereto and less its proportion to any general deductions, shall be the net income derived from such source. The corporation shall submit with its return a statement fully explaining the manner in which such expenses, losses, and deductions were allocated or distributed.

The petitioner relies upon this regulation as authorizing the deduction from its income derived from Government contracts, of the cost of rearranging its plant to conform to its peace-time requirements. We are of opinion that the facts do not bring the petitioner within either the regulation or the intendment of the statute. Even should we assume, in the first instance, that the cost of the change was properly deductible as an expense from income generally, it appears to us that while such cost may have been occasioned by war contracts, it is not cost " appertaining thereto," but rather appertains to the production of future income and is thus a capital item. We think, therefore, that the Commissioner was correct in refusing to deduct this expenditure from war income but that he erred in allowing the amount as a general deduction from income. The amount of the expenditure should be capitalized.

Other errors on the part of the respondent are alleged in the petition, but they were abandoned at the hearing.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*

PHILLIPS: I dissent from the prevailing opinion so far as it holds that the amounts expended by the petitioner in rearranging its plant for peace-time production may not be deducted as an ordinary and necessary expense of its business in the year when the plant was rearranged.

In the instant case it appears from the findings of fact that the plant of the petitioner was enlarged and rearranged for the purpose of handling war contracts; that new buildings were constructed and new machinery and equipment purchased and installed. The emergency having ended, petitioner found it necessary to restore its plant to the condition in which it was prior to the emergency. The cost of so doing appears to me to be not only an ordinary and necessary expense of the business but, in my opinion, added nothing to the capital value of the plant as it already appeared in the financial structure of the petitioner.

The Board has heretofore held, and it seems to me properly so, that the cost of installing machinery is properly to be capitalized as a part of the cost of such machinery and recovered by an allowance for the exhaustion thereof, or otherwise, as are other costs. To require the petitioner to include in its capital, as a part of the cost of its plant, the original cost of installing the machinery, the cost of tak-

ing this same machinery out or rearranging it for war-time production, and the cost of reinstalling the same machinery or rearranging it for peace-time production appears to me to be not only a misapprehension of the situation but a distortion of asset values which is contrary to the facts and which can not be justified.

While it may be that in some circumstances the cost of rearranging an entire plant is an extraordinary rather than an ordinary expense, we must look to all of the surrounding circumstances in each particular case. What may be an extraordinary expense under ordinary circumstances may well be an ordinary expense under extraordinary circumstances. The situation which arose out of the war called upon the industries of the country to abandon peace-time production for the manufacture of the necessities of war. It was generally recognized that production under war-time contracts would be temporary. The expense to which a manufacturer, such as the petitioner, was put in rearranging its machinery to meet the situation and in restoring its plant after the emergency for its normal peace-time pursuits, seems to me properly to be classified, in view of all the circumstances, as an ordinary and necessary expense of the business properly chargeable against the income from war contracts. I can conceive of no basis upon which such expenses can properly be considered as adding to the capital value.